UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO DOMINGUEZ VALERO,<br><br>Plaintiff,<br><br>v.<br><br>MKS INSTRUMENTS, a Massachusetts Corporation; NEWPORT CORPORATION, a Nevada Corporation; BHAVIK PATEL, an individual; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 8:24-cv-01948-JWH-ADS<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [ECF No. 15]** |

Before the Court is the motion of Plaintiff Eduardo Dominguez Valero to remand this action to Orange County Superior Court.[1] Defendants MKS Instruments, Newport Corporation, and Bhavik Patel oppose[2] the Motion, and Valero filed a reply.[3] The Court concludes that this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons detailed below, Valero's instant Motion to remand is **DENIED**.

## I. BACKGROUND

Valero commenced this putative class action in state court in July 2024.[4] Valero asserts the following 10 claims for relief against Defendants—his former employers:[5]

- failure to pay overtime wages;
- failure to pay minimum wages;
- failure to provide meal periods;
- failure to provide rest periods;
- waiting time penalties;

---

[1] Pl.'s Mot. for Order Remanding Action to State Court (the "Motion") [ECF No. 15]. Plaintiff's name is listed as "Eduardo ***Dominguez*** Valero" in the Complaint (the "Complaint") [ECF No. 4-1] (emphasis added). The Notice of Removal [ECF No. 1] renders Plaintiff's name as "Eduardo ***Domingo*** Valero" (emphasis added) in the Caption (which is also reflected on the CM/ECF docket), but as "Eduardo ***Dominguez*** Valero" in the background information at Paragraph 1 (emphasis added). Defendants MKS Instruments and Newport Corporation appear to have made a typographical error when they prepared the Notice of Removal. The Court will refer to Plaintiff as "Eduardo ***Dominguez*** Valero."

[2] Defs.' Opp'n to the Motion (the "Opposition") [ECF No. 19].

[3] Pl.'s Amended Reply in Supp. of the Motion (the "Reply") [ECF No. 23].

[4] *See* Complaint.

[5] *See generally id.*

- wage statement violations;
- failure to pay timely wages;
- failure to indemnify;
- violation of Cal. Lab. Code § 227.3; and
- unfair competition.[6]

In September 2024, Defendants MKS Instruments and Newport Corporation removed the action,[7] arguing that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5 million exclusive of interest and costs and minimal diversity exists.[8]

## II.  LEGAL STANDARD

CAFA provides federal subject matter jurisdiction over a putative class action case if (1) the proposed plaintiff class is not less than 100 members; (2) the parties are minimally diverse; and (3) the aggregate amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2) & (5)(B). "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

The party seeking removal bears the burden of establishing federal subject matter jurisdiction under CAFA. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). When the amount in controversy is not apparent from the face of the complaint, the removing party "must prove by a preponderance of the evidence that the amount in controversy requirement [under CAFA] has been met." *Id.* Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional

---

[6]     *See generally id.*

[7]     *See* Notice of Removal.

[8]     *See id.* at ¶ 9.

-3-

threshold." However, when a plaintiff contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required." *Dart Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

### III. ANALYSIS

**A.   CAFA Jurisdiction—Amount in Controversy**

Under CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity. 28 U.S.C. § 1332(d)(2). To remove a case to federal court under CAFA, a defendant must demonstrate that the amount in controversy exceeds $5 million, exclusive of interest and costs. *See id.* The general rule is that a removing defendant's well-pleaded amount-in-controversy allegations "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87; *see also Ibarra*, 775 F.3d at 1197 (when evaluating the amount in controversy, courts first look to the complaint).

However, when, as is the case here, the plaintiff challenges the removing defendant's jurisdictional allegation, "removal . . . is proper on the basis of an amount asserted" by the defendant only "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $5 million. *Dart Cherokee*, 574 U.S. at 88; *see also* 28 U.S.C. § 1446(c)(2)(B). "In such a case, **both sides** submit proof" so that the Court can decide "whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574

U.S. at 88 (emphasis added).  The preponderance of the evidence standard means that the "defendant must provide evidence establishing it is '***more likely than not***' that the amount in controversy" meets or exceeds the jurisdictional threshold.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (emphasis added).  The defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum, and the Court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations.  *Ibarra*, 775 F.3d at 1197.  There is no presumption against removal in CAFA cases.  *See Dart Cherokee*, 574 U.S. at 89.

Defendants estimate that the amount in controversy is at least $13,855,763.56, calculated as follows:

- $500,083.25 on unpaid wage claims, based upon the assumption that 583 putative class members who earned average salaries of $29.99 worked 15 minutes of overtime per week for each week that those class members were employed;
- $4,000,666.00 on meal period claims, based upon the assumption that each of the 583 putative class members experienced two meal period violations per week for each week that those class members were employed;
- $4,000,666.00 on rest period claims, based upon the assumption that each of the 583 putative class members experienced two rest period violations per week;
- $1,623,046.60 on waiting time penalties, based upon the assumption that 243 putative class members who earned average salaries of $27.83 per hour each experienced a waiting time violation;

- $960,150.00 on wage statement penalties, based upon the assumption that each wage statement for each of 407 class members violated California law; and
- $2,771,152.71 on attorneys' fees, calculated as 25% of the total class recovery.[9]

Valero does not challenge Defendants' assertions regarding the number of putative class members or the average salaries of those class members.[10] Instead, Valero argues that Defendants have grossly inflated the amount in controversy by making unreasonable assumptions regarding the rate of violations that the class members likely experienced. In particular, Valero contends that he alleged only that "some" class members experienced violations "at times," which requires the Court to assume much lower violation rates than those that Defendants have proposed.[11] Valero asserts that the Court should assign $0 in value to most or all of Valero's claims because Defendants have not proven any amount greater than that.[12]

"[T]he amount in controversy reflects the *maximum* [amount] the plaintiff could reasonably recover." *Arias v. Residence Inn by Mariott*, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis in original). In other words, the amount in controversy reflects the maximum number of *potential* violations for which the class members may recover, not the *actual* number of violations that occurred. *See id.* Valero's arguments appear to challenge whether Defendants' assumptions reflect the *actual* rate of violations, not whether those assumptions

---

[9] *See generally id.*; *see also* Decl. of Kay Nishii re. Notice of Removal (the "Nishii Declaration") [ECF No. 3].

[10] *See generally* Motion.

[11] *See generally id.*

[12] *See id.* at 8:10-12.

are reasonable in view of the ***potential*** numbers of violations.[13]  Moreover, "when the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, . . . both sides submit proof" so that the court can "decide[] where the preponderance lies."  *Id.* at 1198.  Defendants have submitted evidence that supports their calculations,[14] and the Court credits that evidence.  Valero, however, has not submitted any evidence to contradict Defendants' assumptions.  Nor has Valero identified the violation rates that he believes to be appropriate.

Valero argues that, under Ninth Circuit precedent, he is not required to present any evidence because he has mounted a factual attack on Defendants' amount in controversy calculations, not a facial attack.[15]  Valero relies on *Harris v. KM Industrial, Inc.*, 980 F.3d 694 (9th Cir. 2020).  In *Harris*, the Ninth Circuit found a defendant's assumptions unsupported because the defendant had not justified its conclusions regarding class membership.  *See id.* at 701.  For example, the defendant had not provided proof that class members "worked shifts that would qualify them as members" of various sub-classes.  *See id.*  Here, in contrast, Defendants have provided a declaration that establishes the number of potential class members for each violation and that explains why those class members may have suffered the alleged violation.[16]

Even setting aside Valero's burden of production, though, Valero's factual challenges fail with respect to each subset of claims.

---

[13]    *See generally id.*

[14]    *See* Nishii Declaration.

[15]    *See generally* Reply.

[16]    *See* Nishii Declaration.

### 1. Unpaid Wages

Defendants estimate that the amount in controversy on Valero's first and second claims for relief is $500,083.25. Valero contends that the assumptions underlying Defendants' calculations are unreasonable.

Valero's first and second claims for relief are for failure to pay overtime and minimum wages, respectively. Under California law, "[a]ny work in excess of eight hours in one workweek and any work in excess of forty hours in one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510. Additionally, "[a]ny work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee." *Id.* Pursuant to California law, all employees are also entitled to receive at least minimum wage for all hours worked. *See* Cal. Lab. Code §§ 1197 & 1999.

Defendants employed at least 583 non-exempt employees during the time periods relevant to those claims, and those employees worked a total of 66,700 workweeks over the class period.[17] The average salary for those employees was $29.99 per hour.[18] Accordingly, if each class member worked 15 minutes of unpaid time per week, then the amount in controversy for those claims is at least $500,082.25.

Valero contends that it is unreasonable to assume that each class member worked 15 minutes of unpaid time per week because he has alleged that "some" class members experienced violations "at times." To the extent that Valero seeks to skirt the amount in controversy by arguing that Defendants committed infrequent or ad hoc violations, the Court is unpersuaded—if Valero does not believe that the alleged violations were widespread or regular, then this action is

---

[17]   *See id.* at ¶ 8.

[18]   *See id.*

not appropriate for class-wide relief, and Valero should not have asserted his claims on behalf of a putative class.

The Court also disagrees that Defendants' assumptions overstate the amount in controversy on the unpaid wage claims. Under California law, Defendants are required to pay one-and-a-half times an employee's hourly salary for any work in excess of eight hours per day, and Defendants must pay two times an employee's hourly salary for any work in excess of 12 hours per day. Defendants' calculations do not take those penalties into account; they assume instead that each class member is entitled to 15 minutes' worth of that individual's base salary per week. Accordingly, a class member who worked 10 minutes per week in overtime would be entitled to at least 15 minutes' worth of his or her salary. That reasoning undermines Valero's argument that the 15-minute assumption inflates the amount in controversy with respect to the first and second claims for relief.

### 2. Meal Period and Rest Break Claims

Defendants estimate that the amount in controversy with respect to Valero's third and fourth claims for relief is at least $8,001,332.

Through his third and fourth claims for relief, Valero seeks class-wide recovery for meal and rest period violations, respectively. Pursuant to California law and applicable wage orders, employers must provide 30-minute lunch periods for every five hours worked, as well as 10-minute rest periods for every four hours worked.[19] *See* Cal. Lab. Code § 512. If an employer fails to provide a full and timely rest or break period, then the employee is entitled to one additional hour of pay. *See* Cal. Lab. Code § 226.7. An employee may recover up to one hour of pay for every day that the employee experiences a rest period

---

[19] Complaint ¶ 52.

violation, as well as one hour of pay for every day that the employee experiences a meal period violation. *See id.*

Over the relevant class period, Defendants employed 583 non-exempt employees, and those employees worked 66,700 workweeks at an average salary of $29.99 per hour.[20] Therefore, by assuming that each employee experienced two rest break violations and two meal period violations per week, Defendants have calculated the amount in controversy for those claims to be at least $8,001,332.

Valero contends that Defendants have grossly inflated the amount in controversy by attributing a "an extreme ***100 percent*** violation rate" for the meal period and rest break claims.[21] That is not true: a 100% violation rate would mean that each employee experienced a meal period and rest break violation for each day that the employee worked, which would result in an amount in controversy of well over $20 million. Contrary to Valero's contentions, Defendants have assumed only a 40% violation rate, and Valero has not provided any reason why that rate is unreasonable.

Moreover, even if it is unreasonable to assume that each class member experienced two meal period and two rest break violations per week, such an assumption would not be fatal to the amount-in-controversy determination. Indeed, the Court could ignore entirely the meal period claims and assume only that each employee was denied, on average, two timely and full rest periods per week. That supposition would still result in potential penalties of $4,000,666. Taking into account the other claims for which the putative class may recover, the jurisdictional threshold would remain satisfied.

---

[20]  *See* Nishii Declaration ¶ 8.

[21]  *See* Motion 14:5 (emphasis in original).

### 3. Waiting Time Penalties

Defendants estimate that the amount in controversy with respect to Valero's claim for waiting time penalties is $1,623,045.

Pursuant to California law, a discharged employee is generally entitled to receive all wages owed to him or her immediately upon termination or within 72 hours of resignation. *See* Cal. Lab. Code §§ 201(a) & 201(b). If the employer does not pay wages due immediately, then the employee is entitled to recover waiting time penalties "from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to 30 days. Cal. Lab. Code § 203(a).

Waiting time clams are derivative of other claims. Accordingly, if any putative class member was not paid for all hours worked at any time during his or her employment, or if the employee experienced a rest break or meal period violation, and if Defendants failed to remedy those violations immediately upon the termination or resignation of the employee, then the class member is entitled to receive up to 30 days' worth of pay.[22] *See Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, 2023 WL 5246264, at *4 (C.D. Cal. Aug. 14, 2023).

During the relevant class period, Defendants employed 243 full-time, non-exempt employees whose employment ended, and those employees worked an average of eight hours per day at an average salary of $27.83 per hour.[23] Therefore, by assuming that each of those employees suffered a waiting period violation, Defendants have estimated that the amount in controversy with respect to those claims is $1,623,045.

Valero asserts that Defendants' assumptions with respect to the waiting period claim are "manifestly unreasonable" in view of Valero's allegations that

---

[22] *See* Complaint ¶¶ 68–73.
[23] *See* Nishii Declaration ¶ 9.

Defendants failed to pay "some" class members "at times."[24] As explained above, that argument is both unpersuasive and troubling. To be entitled to recover waiting time penalties, each putative class member need suffer only *one* of the other injuries alleged in the complaint. And for a putative class member to recover 30 days' worth of his or her salary, the injury need only have lasted for more than 30 days—which is necessarily true if, as Valero alleges, the Labor Code violations remain ongoing.[25] In other words, the 100% violation rate is not only reasonable—it is a necessary condition of Valero's decision to file this putative class action case.

Accordingly, the Court finds that Defendants' estimates regarding the amount in controversy with respect to the waiting period claim are reasonable.

### 4. Wage Statement Violations

Defendants estimate that the amount in controversy with respect to the wage statement claims is $960,150. To arrive at that number, Defendants assumed that every wage statement issued to the 407 putative members of this class over the class period contained some violation. Valero, however, contends that it is inappropriate to assign a 100% violation rate for this claim.

In his Complaint, Valero alleges that Defendants "adopt[ed] policies and practices that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements that accurately reflect, among other things, gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; among other things."[26] Like the waiting

---

[24] *See generally* Complaint.

[25] *See id.* at ¶¶ 15–24 (alleging that the violations "continu[e] to the present").

[26] *Id.* at ¶ 77.

period claim, this claim appears to be derivative of the other class claims. Thus, the Court finds it reasonable to assume that there was a 100% violation rate. However, even if the Court attributed a $0 value to this claim, the amount in controversy would exceed the jurisdictional threshold.

### 5. Attorneys' Fees

Valero argues that it is improper to assume that plaintiffs will recover 25% in attorneys' fees and that attorneys' fees should not be included in the amount in controversy.[27] The Ninth Circuit has held that when, as here, the "underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Courts have generally found that it is reasonable to use a 25% benchmark when calculating the amount in controversy for the purpose of diversity jurisdiction. *See, e.g.*, *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015); *see also Greene v. Harley-Davidson, Inc.*, 956 F.3d 767, 774 n.4 (9th Cir. 2020) (finding that it was "reasonable to assume that" attorneys' fees "equal to 25 percent of the amount in controversy").

Moreover, even if the Court did not consider attorneys' fees at all, the amount in controversy exceeds the jurisdictional threshold.

## B. Equitable Jurisdiction

Valero argues that the Court should remand the entire action because the Court lacks jurisdiction to award equitable remedies for his UCL claim.[28]

The Ninth Circuit has held that "there is original jurisdiction, and therefore removal jurisdiction under 28 U.S.C. § 1441(a), over a case as long as there is subject matter jurisdiction over one or more of the claims alleged." *Lee*

---

[27] Motion 17:9–18:28.

[28] *See id.* 19:8–20:16.

*v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001). And "a district court may not . . . remand a case in its entirety where there is subject matter jurisdiction over some portion of it." *Id.*

It is undisputed that the Court has subject matter jurisdiction over Valero's labor claims, and it is undisputed that the Court lacks equitable jurisdiction over Valero's UCL claim.[29] *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020) (holding that a federal court may not award equitable relief under the UCL "when a plain, adequate, and complete remedy exists at law"). Accordingly, the Court declines to remand the entire action based upon its lack of equitable jurisdiction over the UCL claim. Instead, Valero's UCL claim is **DISMISSED without prejudice**. Valero may attempt to amend his UCL claim to fall within the Court's jurisdiction, or he may pursue that claim in state court. *See Guzman v. Polaris Industries, Inc.*, 49 F.4th 1308, 1315 (9th Cir. 2022) (holding that a district court must dismiss a UCL claim over which the court lacks equitable jurisdiction).

### IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Valero's instant Motion to remand [ECF No. 15] is **DENIED**, and the hearing on that Motion is **VACATED**.

2. The Scheduling Conference remains on calendar for January 10, 2025, at 9:00 a.m.

3. Valero's claim for relief under the UCL is **DISMISSED without prejudice.**

4. Valero is **DIRECTED** to file an amended pleading, if at all, no later than January 17, 2025. If Valero chooses to file an amended pleading, then he is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to

---

[29]   *See generally id.*; Opposition.

Complaint that provides the Court with a redline version that shows the amendments.

  5. Defendants are **DIRECTED** to file their respective responses to Valero's operative pleading no later than February 7, 2025.

  **IT IS SO ORDERED.**

Dated: January 8, 2025

              John W. Holcomb
              UNITED STATES DISTRICT JUDGE